All right, we'll proceed with the final case for today. Case of Meadows versus Cambridge Acquisition. We'll hear from the appellant's counsel. Good morning, your honors. May it please the court, my name is Archus Parasharami on behalf of the appellants. The plaintiffs have made a critical concession on appeal. Specifically, they've conceded that they accepted their arbitration agreements. That concession is crystal clear. We submitted a 28-J letter about a decision called Leeper versus Altice. In response, plaintiffs acknowledged that Leeper, quote, addresses whether the plaintiffs assented to Suddenlink's arbitration clauses, but the plaintiffs are not contesting assent in this appeal. That concession streamlines this appeal. It means that plaintiffs are not contesting that district court erred in refusing to address the arbitration provision in the October 2021 Residential Service Agreement. That's for good reason. It's the provision that the plaintiffs relied upon in their complaints, and it was the version that was in effect when they filed their lawsuits. So with that in mind, turning to the 2021 provision, plaintiffs attack that provision as unenforceable for a number of reasons, and I'd like to focus on three types of arguments the plaintiffs make and our responses to them. First, they argue that there's something problematic or illusory about agreeing to new versions of contracts over time. But again and again, including in the West Virginia Supreme Court, courts have recognized that companies can update contract terms in the ordinary course of their relationship with their customers. Second, plaintiffs contend that the arbitration provision is unconscionable. It isn't. West Virginia law requires both procedural and substantive unconscionability. Neither is present here, much less both. And focusing on substantive unconscionability, the arguments that plaintiffs make either mischaracterize the contract or misinterpret the contract or are foreclosed by binding West Virginia precedent, most notably the Sheridan case I mentioned, which involves the arbitration clause used by a comparable telecommunications provider, Frontier. The Sheridan case disposes of the overwhelming majority of their arguments. Third, plaintiffs spend a lot of time arguing that while this case was on appeal, these cases were on appeal, Altice entered into a class action settlement in New Jersey involving a different case and different claims. They say that that settlement weighs Altice's arbitration right in this case. But every court to address this type of argument has rejected it. Settling one case does not waive arbitration in other cases. Otherwise, defendants with arbitration clauses in their contracts could never enter into class action settlements. So you say they've conceded on this contract, but that alone doesn't end it because you still could have an unconscionable batch there. So address the Sheridan case, the West Virginia Supreme Court case that deals with modification and the question of whether notice of the changes was given here. That was something the district court appeared to have relied on a bit. So two points. One, again, they have abandoned that. The argument that the district court, the district court, by the way, decided this was spontaneous. No one argued to the district court that the 2021 provision was not accepted. We focused on the 2021 agreement because there was a judicial admission in the complaint. And we briefed this in our opening brief. We talked about how because their complaint, the three complaints all cited the 2021 arbitration agreement, they challenge it as unenforceable, but they agree that it exists. Right. So the question of was there notice and assent, that's respectfully out of the picture in this case, given their clear concession. Put it in the picture and give me the answer. Yeah, absolutely. So our point is simple. And there's a case called Frousher v. Altice, which we cited in our briefs, that interprets the Sheridan case. And what it says is that providing notice of the terms in a billing statement is sufficient to form a contract. And month after month, we send bills on the page where you have to fill out the payment if you're paying using the statement. Just above it, there is a statement about payment information and there's a link to the terms. Many cases, including cases involving Altice and Suddenlink, have said that is enough to provide notice of the terms. This is a unilateral contract, right, you would say? Well, in the sense that we provide updates, and yes, the changes were unilateral. You didn't sit down with anyone and negotiate that out. You just sent it to them. Agreed. But at the outset of the relationship with Suddenlink, each, I mean, so when you make these kind of changes, and I admit I learned a lot in terms of cable and how they all operate here, going back and forth, and you know, just I guess these it's just coming up more and more. And I got a feeling we're going to see more cases like this coming up because of just the different services that are provided and everybody has to get it. Now it's all confusing what you're getting. And I do recognize there have been some changes that were made and I think probably in response. But it seems to be an underpinning here that seems like, I mean, you probably, you can do notice, but you can take the minimalist approach to notice. And I think the district court was picking up on that and says, yeah, you might have, you know, you just looked at it and did the least you could do and probably calculated to say, well, who actually is going to read this? Who's actually going to look at it when you, when the question is, if you don't do it, well, you probably won't get your service. So I mean, it's sort of, you know, it's a, you don't have a contract. You got the cable people suddenly here and you got the regular guy out there who wants to watch his football games and stuff on it. And, and you send these little provisions there and, and so, all right, you got notice if you pay your bill. That sounds kind of, that's, I think that's a cool way to get notice, but that's what, I'm just pointing that out because I read that and I'm not sure how it at least in terms of a unilateral contract, that was what the district court really looked at, the modification and changing, you can modify it, revoke it on your own, that sort of stuff. Sounds, I don't know. We're under West Virginia law, so, so, you know. Also, that, that's why I think Sheridan is quite helpful and the Frasher opinion, you know, the plaintiffs make a point, which is, which is a reasonable point that there were two aspects of notice in Sheridan. Most of the notice over time was through bill statements. There was also one time that a paper copy of the bill, of the, of the terms was sent, but the Frasher case cited in our briefs does not, you know, read Sheridan to say that the billing statements were enough. We also cited, and, you know, I don't want to overdo it on the concession, but I think the concession is important because they, again, they do say that they do not challenge assent, that is acceptance of the terms. And when, when we look at the 28-J letter we sent, we sent a 28-J letter about a case called Leeper v. Altice that involved similar, in fact, exactly the same kind of notice that Southerling provided. Wait a minute, where did the case come from? It's from Arkansas. And where? From Arkansas. We said, so. What, what court in Arkansas? So, so, here's. I'm just asking, what, I, I, I mean, I probably haven't even had the chance to fully review it. Just tell me. Sure. So, so. What court in Arkansas did it come from? So, which court? So, it's a federal district court in Arkansas that was citing the Arkansas Court of Appeals. And the reason that's important is just because we wanted to show that this is a uniform practice that every, and 10 courts have accepted this kind of notice, including multiple cases involving Altice. The, the Arkansas Court of Appeals cited in the Leeper case said that providing notice via billing statements was sufficient. I, you know, I understand. It seems like a little ironic to me. You tell someone, said, well, the internet's provided us key terms for this contract available on the internet. That sounds kind of strange to me. Well, for somebody who has. Because guess what? If you don't, if you don't go to that internet, or if you don't get it, you can't get these terms of this contract. So, you know, and you got to pay your bill to get it. So. So, so the bill is, the bill is for. It's kind of ingenious, I think. I mean, it's kind of, you know, I guess that's a, that's a good word for it. Maybe my colleagues have different terms for it. But it. So, the bill is for going forward service. I, I think providing access to terms on the internet when people have internet service is the easiest way to access it. I want to be clear, though. At the start of the relationship with Suddenlink, each of these customers signed a document, right, signed an electronic screen, were right under an acknowledgment that they were agreed. Was that the. For different, different, for two of the plaintiffs, it was 2011. The start was June, was that, that wasn't June 16. Well, that's the June, that's the June 16 agreement that the district court refers to. But what, so, so these were earlier agreements they signed. But one of the things they signed was an agreement that we could revise the terms in this way and that they would look at the terms. When, if they were updated. I, I think it's a very, I want to say two things. One is that, the reason I mentioned the Arkansas Court of Appeals, that we present this argument to say, this is commonplace, this is how it's done. And the plaintiffs essentially poo-poo it and say, that doesn't, we don't have to respond to that because we're not contesting assent. So, I do, I do want to, you know, I mean, it would be one thing if the plaintiffs had argued, you know, we couldn't have accessed this, we didn't, you know, we, we don't consider ourselves bound. But they've told this court that they've assented to it. Having said that, even if we put that aside for the moment, but I think it's pretty important in this case because I think it's dispositive of the applicability of the, of the provision. This is a, this is a natural way to update terms because you do, it is in a place that you would see it when you pay your bill. All these plaintiffs receive paper bills. You know, I, I want to, you know, try and address the court's questions because it, it seems also undisputed that the earlier provision applies. And so, you know, I want to hit that if the earlier provision were to apply, and again, I think we should hang on to the concession, but then I just want to talk a little bit about the first, the 2017 terms. Here, again, the district court, because no one debated in the district court, pointed to three provisions that it said were unfair. But each of those provisions is enforceable. There was a one-year statute of limitations period. That's been eliminated subsequently. This court in the Cotton Yarn case cited in our brief, and the West Virginia Supreme Court in a case called Hampton Coal said that one-year statutes of limitation are, are enforceable. There was a reference to the debt collection exception. Again, not briefed because the district court just kind of came up with it. And that reflects the, and we talked about this in our brief at, opening brief at 53, again, not challenged by the plaintiffs, that that reflects that, that the AAA had a moratorium on debt collection claims. So, so that's not unenforceable. AAA is your choice of form. It's, it's a non-profit organization. That, that, that also kind of goes against trying to, the mutuality aspect here. I mean, you chose that, so then you got that limitation. They don't have it, you know. But, but it allowed you, before the provision would allow you to go out to court to somewhere else, but didn't, they couldn't go out on anything, on that exception. Well, this, this, on this, on this particular exception, we could not affirmatively bring debt collection except, claims only because the AAA said that. So it was simply recognizing that fact. Courts have said that that is commonplace. No court has relied on that provision to strike it down. And you, there was a punitive damages limitation that was severable. And, and the district court didn't deny that. So, and I have to say, there is no real fight about any of those points. You know, if you look at the plaintiff's brief, they don't take those points on, because they agree that a later provision applies. So I, so I think that's pretty important. I want to talk about the 2021 provision, because again, I do think that the court should accept the concession. And then there are sort of two sets of points to make. There are some provisions that are within the arbitration clause, and some that are outside the arbitration clause. As to claims that are outside the arbitration clause, the Supreme Court has said that arbitration provisions are severable from the remainder of the contract. That's the PrimaPaint case. This court, in a case called Snowden, said that you have, you know, follows PrimaPaint. And subsequently in a case called Morithy v. Shuttle Express, which I will, let me, apologies, grab the site to you, 712F3rd173. This court held that a general one-year limitations period outside the arbitration provision that applied equally to arbitration and court proceedings could not be considered by a court in an attack on the arbitration clause. That, that binding precedent of this court forecloses looking outside the arbitration clause. I know plaintiffs make much of things that are outside the arbitration clause, but this court's precedent says that's not proper. And so then what we're left with in the 2021 provision are three provisions within, or three sub-provisions within the arbitration clause. There's a prohibition on non-individualized injunctive relief or classified relief. The Sheridan case looked at identical, virtually identical language and said that this was enforceable. That is clear in Sheridan. And so that argument is foreclosed by precedent. The plaintiffs argue that a pre-arbitration notice of dispute process is problematic, but that is a common feature of arbitration provisions. It was in the arbitration clause at issue in AT&T Mobility v. Concepcion. We explained in our brief why that provision is, is fair. The Ninth Circuit recently, in a case called Bielski v. Coinbase, 87F41003, Ninth Circuit 2023, held that that provision is, is enforceable and fair. And it facilitates settlement. I see my time's up. So, you know, I, you know. We've got some time coming back on rebuttal. Okay, thank you. You've got another shot at this. Okay, thank you. Before you sit, let me ask the judges. Judge Rushin, did you have any questions? Judge Lewis? No, thank you. Thank you. We'll hear from the appellees. Thank you, your honors. May it please the court. Jonathan Mitchell on behalf of appellees, Benjamin Meadows et al. The district court correctly held that the arbitration provisions in Suddenlink's residential services agreements are unconscionable under the law of West Virginia and are therefore... If one applies, what agreement are we talking about? Are you, your colleague says, in your letter, you say plaintiffs are not contesting assent to the 2021. Your briefs seem to say all of the agreements your client assented to. So are we talking about the 2021 RSA? No, I'm sorry. That's what, answer her question on that point. She's asked about October 21. We are not contesting assent to the October 2021 agreement, but they all apply. I mean the October 21. We don't have to discuss the district court's ruling about 2017 is the right time. The 2016 agreement applies and was there notice of modification? We don't have to decide any of that because the parties agree the 2021 agreement was agreed to by both sides. We do agree that our clients assented to the 2021 agreement. We believe it's unconscionable and therefore unenforceable. I mean, there are all sorts of other disagreements that we have. We also believe the 2021 agreement does not in any way revoke the applicability of the earlier entered residential services agreements. So there's a problem there. Yeah, I think when you go there, see where we're going with this, it sounds to me when we are dealing with successive contracts, we look at the latest one. But the problem, that normally is correct, Judge Wynn, the problem in this situation is that the earlier contracts have explicit language that say that the arbitration requirement continues to govern even after the contract goes away. It is a commitment to arbitrate in perpetuity. Now it's still possible, I think, for a later enacted contract to supersede that, but it would need to say that explicitly. We would need to see. It's not common in arbitration provisions, though. It is common. Dealing with the latest contract is what we look at to make that determination. In particular, we find that to be the operative agreement here. Yeah. It seems like Judge Russell was going with this and that's why we need to decide that up front. Your counsel on the other side made that point right up front. They recognized what that meant. When you said, you know, you're going to assent to this, I think you, at least it seems to me, you took the rest of them off the table. That's possible. You think, well, it's going to be a little bit more impossible until you give us a better reason to say why the latest one does not represent the contract we ought to be looking at here. Normally, I would say the latest contract would control if there's a conflict between the two. The problem that we have here, Judge Wynn, is the... Wait a minute. I'm sorry. Between the two of what? Well, it's between more than two. In this case, it's five. But there are all these different... But you don't look at a conflict if you're looking at the latest. When the latest comes, that's the contract. You don't need a conflict. But the question is the arbitration requirement within the contract, right? Yes, the latest one in October 21, that contract. Yes, which we assented to. Yes. Go ahead. To be clear, we agree that we assented to the October 2021 agreement. So it is applicable to this case. The question is, does that agreement somehow revoke or supersede the earlier agreements? Perhaps it does. Perhaps it doesn't. We have argued in our brief that all those remaining arbitration agreements are still in effect. And to be somewhat more charitable to the district court, the district court was in somewhat of a dilemma because it was trying to figure out which contract applied. So that's why I think it went off on an argument that we didn't make. Which one applied? All those complaints talked about the 2021 agreement. They confronted it at length. They complained about its provisions. Yes. Complained us for contesting the 2021 agreement. And the defender came in and said, let's talk about the 2021 agreement. That's the one that applies. I don't see any confusion about that in the district court, except for the district court decided not to accept that. Right. That's right. And we didn't argue that in the district court. It made a holding that we did not assent to the 2021 agreement. That was the district court's rationale. We did not argue that in the district court, and we're not arguing that on appeal. So again, we all agree the 2021 agreement is applicable. I think where we disagree is, is it unconscionable? Clearly, we disagree over that. And is there another problem that needs to be dealt with because of these prior agreements that all claim that they will apply into perpetuity even after the original contract terminates? So it's a difficult question to resolve. I don't think it would be unreasonable for the court to say that the last in time rule should apply as Judge Wynn suggested. And it doesn't hurt our case if the court were to say that because the 2021 agreement is worse than the 2016 agreement when it comes to the problems that give rise to the unconscionability holding of the district court. Everything the district court said about the 2016 agreement and its unconscionability under West Virginia law is equally applicable to the 2021 agreement because the agreements got progressively worse in terms of the more they would limit remedies, the more difficult it would make for plaintiffs to recover anything. You really can't get anything at all under this arbitration agreement. If you actually look at what it says, the only type of remedy... Is it an arbitration agreement or is it outside the arbitration agreement? So suddenly claims that it is outside the arbitration agreement because it's in a section that's numbered differently from the section number that actually talks about arbitration and the obligation to arbitrate. Our position, Judge Rushing, is and the court has held this in the previous case of Hayes, you don't look solely to the arbitration clause that's delineated arbitration. You have to look to the contract as a whole and read the arbitration obligation within the context... The attorneys had provisions inside the arbitration law panel, right, addressing what law applies, how we interpret this agreement. And those provisions said no federal law applies, no state law applies, we're taking away all your rights except under tribal law. And so the court looks to, you know, looks to see what law governs the That's pretty different from saying the court decides whether certain terms outside the arbitration division are going to be unconscionable when it comes to receiving certain remedies, right? The Supreme Court has told us to look at the arbitration clause, decide if it's an agreement, and then the arbitrators decide how it will be settled. Yes, that's right. So we agree with SuddenLeak on this point. The unconscionability of provisions in the agreement that fall outside the arbitration clause, however we define the arbitration clause, are for the arbitrator to decide, not the court. The court's job is to determine arbitrability. So if the arbitration requirement is unconscionable, that is something a court can hold in denying a motion to compel arbitration. But it should not be looking to provisions that are completely outside the scope of the contractual obligation to arbitrate. Because even though those provisions may be unconscionable, that is something for the arbitrator to decide and not the court. So we agree with the premise of SuddenLeak's argument, and I agree with the premise of what Your Honor just said. Where we disagree with SuddenLeak is whether these provisions that we're challenging fall within the scope of the arbitration clause. SuddenLeak is taking a very formalist approach. They're saying essentially look at the number section, I think it's either section 20 and some and section 24 and the other, where it's actually titled arbitration. And look at what falls within that numbered section, and that is the arbitration clause. The problem with that argument is they have actually taken provisions that used to be in the numbered arbitration clause and moved them out of that provision into different sections to escape the attacks that we're making on the arbitration requirement as unconscionable. Our position is Yes, they do. But it is still part of our contractual obligation to arbitrate. Because when we go to arbitration, we have contractually agreed that the arbitration proceedings and the arbitrator's powers will be limited in that regard. So we believe it is properly considered part of the scope of our contractual agreement to arbitrate. Regardless of how it's numbered in the provision, regardless of The arbitrator can decide whether it's required by law or not, whether that's an appropriate provision or not. That's not in the scope of what we're supposed to be looking at. The arbitrator can decide, and if the court sends this case to arbitration, we will certainly renew those arguments before the arbitrator. We're not going to say that he can't decide those issues. But for this, this court's task is to determine arbitrability. And whether the requirement to arbitrate, the contractual obligation to arbitrate, is substantively and procedurally unconscionable under West Virginia law goes to arbitrability. And that's why it is properly before this court. Again, we agree with the premise of the argument. Provisions that are outside the scope of the contractual obligation to arbitrate are not for this court to decide. That's for the arbitrator. But the question that needs to be resolved is, are these provisions that we're attacking as unconscionable, these limitations on remedies, all the other provisions, the one-year statute of limitations, everything the district court talked about, is that properly considered within the scope of the contractual requirement to arbitrate, or is it outside the scope? If it's outside the scope, then it is for the arbitrator to decide. And that's where we disagree with Suddenlink. There are other provisions in the Residential Services Agreement that raise serious unconscionability problems under the law of West Virginia as a district court. What was that first provision you said that raised the unconscionability? Well, the fact that we can't get any remedies. The only remedy that's allowed under this arbitration clause is a refund. You can't get a remedy. That's what you maintain, that the arbitration clause Because let me tell you how it gets confusing. I mean, it's sort of like we're getting into whether this is procedural arbitrability or substantive arbitrability. And when you say we have a contract and we, from October the 21st, I'm just walking you down the road to court, or at least I'm thinking right now, I'm looking at that arbitration clause on October 21, which omits a number of the things from the previous contract. Just listen, that the trial court had problems with. They're not in that one. And so I'm looking at that. You are saying, well, they put them somewhere else. Well, it's not in the arbitration clause part. So maybe the contract's got some problem with it as a whole. But your contest here is dealing with arbitration. And so we're looking just at this arbitration clause here. And the reason I'm giving you this is because, I mean, you've talked about outside and everything else, and we can let you go on. But I want you to hone in on what it is in that October 21 contract, the specific provision you now say is unconscionable under Western Virginia law. And just to be clear about Your Honor's question, are you asking me what part of the section that's labeled arbitration clause is unconscionable? Yes. All right. So they have been, yeah. That gives, that delineates you to go to arbitration. I'm not asking you about the title of the introduction page or all the other part, because it's under the arbitration clause that we now focus. That's the one you agreed that you've assented to. Right. This court had a problem with it. This court said you didn't get notice and all that kind of stuff. Right. But you say, oh, yeah, we got it. We're good. That's what assent means. So now we, you know, I think it was a different, maybe a different path when you're kind of looking at 16, all the other ones there, the things that happened. But now when you start looking at punitive damages and the one-year limitation, the opt out, it's not in 21. It's not in there, but it's still in the residential services agreement. So again, what the court needs to resolve is whether Suddenlink can escape the unconscionability holding that the district court made with respect to the 2016 agreement by taking the problematic provisions and just putting them in a different part of the residential services agreement that is not formally labeled obligation to arbitrate. Doesn't that just make those provisions now the problem of the arbitrator to resolve? If you accept Suddenlink's argument, then. I mean, you say you're a party to the October 2021. Right. The terms, maybe there's some problems with them. Maybe they're not. But anything that's outside of anything that you have agreed to arbitrate, I mean, the arbitrator is going to decide everything. If you've got a problem with the rest of the contract, if you've got any issue, you've agreed to let the arbitrator do that. If it's outside the scope of the arbitration clause, yes, I agree. I mean, the only thing we can contest before this court is the arbitrability issue. So if we're making an unconscionability argument, it has to be an unconscionability attack on our contractual obligation to arbitrate and not something that is external to that particular contractual obligation. So, again, really the nub of this disagreement is how should this court characterize those provisions in the October 2021 agreement that used to be in the arbitration clause and that Suddenlink moved out of that numbered section in order to say that this now goes to the arbitrator? Should that maneuver by Suddenlink succeed? Or is this ultimately going to turn on this type of formal formalistic drafting process where anyone can just make the arbitration clause, the formal part that's numbered arbitration and labeled arbitration as narrow as possible and then include all other limits on the arbitrator's power in some different section? If they agree to the arbitration agreement, they can do that. The arbitrator will now decide that. If the agreement to arbitrate is valid and the district court held it was unconscionable and therefore unenforceable. So if the court was wrong, if the district court was wrong to say that our contractual obligation to arbitrate is unconscionable, then obviously this has to go to the arbitrator and everything further would be decided by the arbitrator himself. But we're coming in with a preliminary challenge to the contractual validity of our agreement to arbitrate. And we've said before the district court and before this court, this is substantively and procedurally unconscionable under the law of West Virginia. Therefore, it shouldn't go to the arbitrator because this case simply is not arbitrable in the first place. What is it specifically that's substantively unreasonable in this contract? In the contract itself, all the things that we mentioned in our brief. Number one, the limitations on liability, which are extreme. You can't recover anything except a refund for one bill that suddenly can give in its total discretion. So there's just no remedy that can be issued. You can't get a remedy that affects other customers. So if there's a systematic problem with internet service, no arbitrator and no court can remedy that because that would affect. I thought Suddenlink said somewhere in their brief that you have a right to go these remedies to the same extent as you can in a court. That's true. You do. But the court, the problem is the judicial remedies are just as limited as the remedies that you can get in arbitration. I don't see how that point helps Suddenlink one bit. What remedies do you want? Well, we would want damages. We'd want an injunction. We'd want what a court can give you. But a court can't give those remedies because the contract says no one can give the remedies. The arbitrator can't give them. The court can't give them, no matter where we go. So yes, I mean, that provision does appear. It sounds like to me your context is that the contract itself is unconscionable. It is. But our question, we're dealing with arbitration. That's correct. So that's the confusing thing. Maybe I'll just have to study it a little bit better. I don't quite get it. It sounds like to me that you can put a whole contract can be unconscionable all day long. Then you put this little clause that says all disputes will be handled in arbitration. Well, as Judge Lewis alludes to, that just means you now go to arbitration and you arbitrate that contract, what's in it, and all that other stuff in there. But that is Suddenlink's position. And the reason we disagree with that, Your Honor, is because we are claiming that these restraints on the arbitrator's power should properly be construed as part of our contractual obligation to arbitrate. It's really going to depend on whether the Court takes the formalistic approach that Suddenlink is urging, which is just look at that provision, that numbered provision that says arbitration clause, or whether we should take a more functionalist approach, a more substantive approach to see what parts of this contract, the overall contract, touch on our contractual obligation to arbitrate. And it's not simply the requirement to go to the arbitrator, but it's also what will this arbitrator be allowed to do. And if he can't give us... Anything you're saying, do we look at the arbitration clause, or do we look at anything that might touch on the resolution of your legal claims? No, I wouldn't go that far, Judge Rushing. That's just a contract, right? No, no, that's... The Supreme Court has kind of decided that already. I'm sorry. And Your Honor, with respect, I think that's a caricature of our argument. We're saying what this Court said in Hayes, which is that the arbitration clause needs to be construed within the context of the overall contract. And we're not trying to put this Court in a slippery slope where every single provision in the contract is somehow part of the arbitration or the contractual obligation to arbitrate. But certainly a provision in the contract that limits the power of the arbitrator defines what we can and can't do in arbitration. We've been contractually required by this document not only to go to arbitration, but go to an arbitration proceeding where we can't get any relief. Not only that, there's a provision that says... That is correct. It would apply in court. It would apply in arbitration. But that doesn't change the fact that the contractual obligation that we undertook is substantively unconscionable. The contractual obligation to arbitrate is substantively unconscionable because this arbitrator has been completely handcuffed by the terms of this residential services agreement. He can't do a thing. Not only that, we have to pay the attorney's fees of Suddenlink if we arbitrate, even if we win. Now, there's a provision... We talked about this in our brief. Suddenlink tries to come back in the reply brief and say, well, that's a scrivener's error. We don't really mean to say that the customer has to pay attorney's fees. We meant to say Suddenlink. Why haven't they corrected this contract? They have the power to unilaterally amend it. They unilaterally amend it all the time. There have been three different residential services agreements that contain the supposed scrivener's error. If it's a mistake, Suddenlink needs to fix it. They shouldn't be coming into court after they have this provision that clearly deters people from seeking arbitration or any type of remedy and then telling the court when it actually is challenged as unconscionable, well, that's not really what it means. Please actually rewrite it to say something else. I'm happy to answer any other questions the court may have. I see my time has expired. Judges, do you have any more questions? Judge Russin? Judge Lewis? No, thank you. All right, thank you, Your Honors. Thank you very much for your argument. All right. You have just a few minutes in the bottle. If you choose to use them. I do feel like the court understands our basic submission that the, I think if there's now on the record a concession that the 2021 agreement is the one to evaluate. I think you heard an attempt to bring in clauses outside the arbitration provision. But I think the court understands. I think all of the court's questions have reflected our position, which is that the Supreme Court's precedent and this court's precedent require leaving those questions for the arbitrator. I want to comfort the court that when it comes to questions like these limitations on remedies and limitations on warranties and the like, that they apply to the greatest extent permissible by applicable law. But that builds in that if just like a court, an arbitrator thinks that the law doesn't allow for these limitations, then the arbitrator can strike them down. What are these provisions that's not in the arbitration clause? You can imagine the hypothetical. It's a different paragraph. It's not the arbitration clause, but it says, the arbitrator shall not be allowed to do X, Y, Z. Can we say, hey, that's a function of the agreement to arbitrate and decide whether that makes the arbitration clause unconscionable? Or are you saying, you can't look at that. It's outside the paragraph. Therefore, the court can't consider it. No, our argument is not as formalistic as that. I agree with your honor that if, for example, in let's call it paragraph three, there is some reference to what the arbitrator specifically cannot do. You know, if it had really been true, and it's not true, by the way, that we just move things out of the arbitration clause, all the things that they challenge are things that were in the contract already. What we did was eliminate independent constraints on the arbitrator's authority. And so to your point, if in fact, let's say there was a sentence in paragraph three, not the arbitration clause, that says, by the way, the arbitrator may not consider claims that are more than one year old. If as opposed to a limitation that applies equally to arbitration in court, then I would agree with your honor. But that's not what we have here. What we have are restrictions that apply equally to arbitration in court. They are ones that an arbitrator can strike down. You know, I want to say that, you know, we, one of the reasons that these clauses exist, I think warranties are a great example because people, I think, understand this. Everybody has seen in basically every warranty ever, your car warranty, you know, your iPhone warranty, whatever, that they say, we warrant nothing, we limit our warranty as full as possible. But some states may not apply this, so then this exclusion doesn't apply to you. That's what we basically say when we talk about the limitations on remedies and the limitations on warranties and the like. And so what I think they will, if we end up in arbitration, they will challenge those and they'll have a fair opportunity to tell the arbitrator that, for example, limitation on punitive damages is unenforceable. I think on the merits, they are not entitled to punitive damages, but that's also a question for the arbitrator. And so, you know, I just want to just... Well, let me answer this. So you have here, I mean, maybe you don't like the other side, a district court judge makes a determination on earlier contracts, these provisions are unconscionable. Right. Because there's no notice or anything. So you rewrite it and you take the same provisions and you stick them in a different part of the contract. Is the arbitrator bound by the district court's determination? Well, no, I want to say this district court, you know, I guess now we have a situation where... I hope I'm understanding the question correctly. We have a situation where... This court found that it was unconscionable. You took the unconscionable provision out of the arbitration side and stuck it in a different section. When the arbitrator gets it, is the arbitrator bound by the district court's determination? This court already says that that provision is unconscionable. So I think it's a hypothetical, because we didn't do that. We didn't, in fact, move things out. If we had, because of the way that the timing worked, I would say yes. I think to give an example that I think is fair, the district court ruled that a punitive damages limitation that is not in the contract anymore is unenforceable. I think that would have, at minimum, very high weight if these plaintiffs were to argue in arbitration that the pre-existing limitation on remedies that contains a limitation on punitive damages to the extent applicable, that applicable law would allow it, that would be pretty influential on an arbitrator. I think it's likely that a limitation on punitive damages would be struck down in the district court's opinion in that regard. There are some issues when it goes to the arbitrator. If this goes, if you prevail, this court's already made some pronouncements on it. You're saying that this court is neither bound nor has to... I think... Yeah, I mean, it seems like to me, pretty pointed. Some of those things, this court may have actually addressed quite poignantly, entered the judgment, is there, and arbitrator got the same case. And you're talking about a fellow district court, not just an arbitrator, who's made that determination. What impact does that have on an arbitrator's decision? I think it's likely to have a high impact. At minimum, and perhaps might be bonded. I think the hypothetical suggests that the exact same limitation on the arbitrator went outside the arbitration clause. If that were really true, I think the district court would be bound. I'm sorry, the arbitrator would be bound by the district court's ruling. I see. Okay. Thank you. All right, we thank both counsel for your very able arguments to this court. Uh, we are going to come down and greet you. But before doing so, I would ask the clerk to adjourn us sine die until we convene court again in the future. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: James Andrew Wynn, Allison J. Rushing, Mary G. Lewis